## *In re* CHICHESTER.

### (*Circuit Court. W. D. Texas.* November 19, 1891.)

CUSTOMS DUTIES—BOARD OF GENERAL APPRAISERS—JURISDICTION.

The jurisdiction conferred on the board of general appraisers by Act Cong. June 10, 1890, relating to the collection of revenue, to review the decision of the collector as to the rate and amount of duties on imported merchandise, extends only to merchandise lawfully entered and regularly invoiced and appraised; and they have no jurisdiction, in the case of goods seized and libeled for forfeiture in the federal courts, to review the collector's determination of duty to be paid thereon, as required by Rev. St. § 938, in order to secure delivery of such goods to the claimant.

At Law.

On appeal from the decision of the board of general appraisers.

On January 13, 1891, the collector of customs for the collection district of Saluria seized at Eagle Pass, in the state of Texas, certain five car-loads of lead and silver ores, consigned to E. H. Chichester, as forfeited to the United States, by reason of certain alleged attempted false and fraudulent entries of said ores as imported goods. Thereafter, on the 31st of January following, the district attorney for the western district of Texas libeled the said ores in the district court for the western district of Texas, claiming their condemnation and forfeiture to the use of the United States by reason of alleged attempted false entry and invoices, to-wit:

"*First.* He did attempt to make, and did make, a false and fraudulent entry of said imported goods, wares, and merchandise under a certain false invoice, then and there omitting and failing to comply with the instructions of the secretary of the treasury of the United States of America of date July 17, 1889, in this, to-wit: He failed to make a declaration that the said imported goods, wares, and merchandise embraced no mixture of ores or concentrates from different mines, and thereby was guilty of a willful act of omission, by means whereof the United States shall be deprived of the lawful duties then and there accruing upon the imported goods, wares, and merchandise aforesaid, and portions thereof; and all this he, the said E. H. Chichester, illegally did, with the intent to defraud the revenue of the United States of America. *Second.* He, the said E. H. Chichester, did then and there make, and attempt to make, a false and fraudulent entry of the imported goods, wares, and merchandise aforesaid, having first willfully and intentionally commingled the aforesaid ores, the same then and there being taken from different mines, so that said ores so commingled would assay in such a manner as to avoid the force and effect of the laws of the United States in such cases made and provided for the collection of her duties, in this, to-wit: Had said entry been received as a just and proper entry by the said collector of customs, then the United States would have been deprived of the lawful duties on said aforesaid ores, and a portion thereof, embraced and referred to in said invoice."

Warrant being issued, and the said car-loads of lead and silver ores being taken into the possession of the marshal, Chichester, consignee, applied to the court for leave to bond the said ores under section 938 of the Revised Statutes of the United States, and, as a prerequisite to such bonding, applied to the collector of customs of the district to pay the duties on the said ores in like manner as if the same had been legally

entered.' The collector exacted as duties upon the said ores the sum of $2,427.60, which was paid by the claimant, for which receipt was given as follows:

"CUSTOM-HOUSE, EAGLE PASS, TEXAS.

"COLLECTOR'S OFFICE, February 21, 1891.

"Received of E. H. Chichester the sum of twenty-four hundred twenty-seven and 60-100 dollars, ($2,427.60,) being duties on 99,200 pounds of lead ore, at one and one-half cents per pound, and on 64,640 pounds of lead contained, according to assay at port of entry, in 149,500 pounds of ore, at 1½ cents per pound on the lead in said ore as aforesaid; said ores being same described in that certain cause numbered 57 on the docket of the U. S. district court for the western district of Texas at San Antonio, and styled The United States vs. 448,700 pounds of silver and lead ore, and libeled January 31, 1891. Of the above sum the amount of $972.19 is paid under protest, as excessive.

[Signed]    "F. A. VAUGHAN, Collector Customs District of Saluria, Texas.
"By C. W. HARTUP, Special Deputy."

Presenting the above receipt to the court, accompanied with an agreement by the district attorney as to the appraised value of the ores in question, consignee, Chichester, obtained from the court an order for the delivery of the property on bond pending the suit. The record further shows that at the time the consignee paid the duties on the said ores, as shown by the above receipt, he filed a protest with the collector, claiming that the sum of $877.92 was in excess of the amount of duties to which the United States was entitled according to law. He afterwards filed a more extensive and elaborate protest, in which he "asks that said excessive duties, so collected and paid under protest in order to replevy said ore, be repaid, and further asks that this protest be submitted to the board of general appraisers." Upon these protests the case was submitted to the board of general appraisers, which board, on the 14th of April, 1891, rendered the following decision:

"This importation of silver and lead ore was seized by the collector on the ground that the shippers and consignees were attempting to defraud the revenue by bringing in ores from several mines, so mixed as to give the ores a high content of silver, and to make the importation dutiable only on the lead contained, instead of on its gross weight as lead ore. The collector states that the case was reported to the United States district attorney, who filed a libel against the ore on January 31, 1891, and that the suit is now pending in the United States district court for the western district of Texas. The collector further reports that the ' appellant, having sought to replevy by giving bond and paying me the duties thereon, did, on the 21st day of February, 1891, pay to me, ———, the duties on said ore as assessed by me according to weights and assay at this port.' The collector holds, in conclusion, ' that the board of general appraisers has no jurisdiction to hear and determine the appeal, but that the question involved must be determined according to the decision of the United States district court.' It appears that duty to the amount of $2,427.60 was assessed upon the ore. This sum was paid by the importer under protest, as he claimed that of the amount $877.92 was unlawfully exacted, improper samples having been taken in determining the classification of the ore. As section 14 of the act of June 10, 1890, gives jurisdiction to the board in cases where the importer has duly expressed his dissatisfaction with the amount and rates of duties assessed, we see no reason why we should be excluded from a consideration of the appeal now before

us, because the question of the forfeiture of the merchandise is in controversy before a United States court. The question for our consideration, under this protest, is the legality of the collector's method of assessing duty on two car-loads of ore, weighing 99,200 pounds. He selected samples from a portion of the ore containing a very low silver content, claiming that the portions of the car-loads rich in silver had been mixed for the purpose of defrauding the revenue. In accordance with the assay of the samples thus taken, duty was assessed upon the 99,200 pounds, at $1\frac{1}{2}$ cents a pound, as a lead ore. The collector states that, if the ore was dutiable in its mixed state, the appellant would be entitled to recover. Lead and silver ores are thus provided for in paragraph 199, Act Oct. 1, 1890: 'Lead and lead dross, one and one-half cents a pound: provided, that silver ore, and all other ores containing lead, shall pay a duty of one and one-half cents a pound on the lead contained therein.' There is nothing in this provision of the tariff, or in any other that we know of, to warrant a discrimination against the importation of mixed ores. In paragraph 383 penalties are prescribed for the importation of mixed wool, and in section 11 the importation of obscene articles, etc., is prohibited. But there is no such limitation or prohibition in regard to ores of any kind, and no such discrimination can be lawfully made, except after further legislation by congress. The protest of the importer is sustained as to the amount of $871.98, which we find from the report of the collector to have been unlawfully exacted."

To review the questions of law and fact involved in this decision, the secretary of the treasury has applied to this court under section 15 of the customs act of June 10, 1890, upon the following assignment of errors:

"(1) The said board erred in taking jurisdiction of said protest when the merchandise referred to therein was then libeled as forfeited to the United States for being entered in fraud of the revenue laws of the United States. (2) The board of general appraisers erred in holding that an importer can mix lead ores with silver ores so as to give the ore a high content of silver, and after so doing import the whole amount of mixed ores as silver ore. (3) The board of general appraisers erred in holding that there is nothing in paragraph 199, Act Oct. 1, 1890, (Tariff Act,) or in any other act, warranting a discrimination against the importation of mixed ores. (4) The board of general appraisers erred in holding, in effect, that the acts of the consignee, as stated in the libel filed in cause No. 57, district court, western district of Texas, San Antonio division, and the proof of the government thereon, did not operate as a fraud on the revenue of the United States. (5) The board of general appraisers erred in holding that the collector had exacted $871.98 in duties in excess of the amount legally due on said merchandise."

*A. J. Evans,* U. S. Atty., and *Henry Terrell,* Asst. U. S. Atty., for appellant.

*Jas. M. Goggin* and *John H. James,* for claimant.

PARDEE, J. The facts of this case show that precisely the same questions were at issue and passed upon by the board of general appraisers as are involved in the suit for forfeiture then and now pending in the district court for this district. In the district court the questions involved, as presented by the libel, are (1) whether the consignee was required to make the declaration that the said imported goods embraced no mixture of ores or concentrates from different mines; and (2) whether

ores of different mines can be lawfully commingled by the importer for the purpose of giving the mixture created a high content of silver, and thus make the importation dutiable on the lead contained instead of on its gross weight as lead ore, thereby avoiding the force and effect of the laws of the United States, and reducing the revenue of the United States. The question before the board of general appraisers was apparently as to the amount of duties exigible on certain aggregates of mixed ores, but the real question necessarily decided was whether or not the importer had the right to so mix ores from different mines as to give the ore a high content of silver, and thus make the importation dutiable only on the lead contained, instead of on its gross weight as lead ore. The anomaly is thus presented of the board of general appraisers taking jurisdiction in a cause pending in a court of the United States for a forfeiture of goods, and deciding, as it were, finally the issues involved; for, in the language of the statute under which the jurisdiction is claimed, "their decision, or that of a majority of them, shall be final and conclusive upon all persons interested therein. And the record shall be transmitted to the proper collector, or person acting as such, who shall liquidate the entry accordingly, except," etc. The question of jurisdiction thus becomes exceedingly important, for, if maintained, the jurisdiction of the courts in suits for forfeiture is clearly affected, if not decidedly curtailed. The board of general appraisers was established by act of congress approved June 10, 1890, entitled "An act to simplify the laws in relation to the collection of the revenues." 26 St. at Large, p. 131. The first eleven sections of the act provide the mode and manner of entering imported goods for the payment and collection of revenue duties thereon; for the entry, the invoice, the declaration, and the ascertainment of value. The twelfth section of the act provides for the appointment of nine general appraisers:

"They shall be employed at such ports, and within such territorial limits, as the secretary of the treasury may from time to time prescribe, and are hereby authorized to exercise the powers and duties devolved upon them by this act, and to exercise, under the general jurisdiction of the secretary of the treasury, such other supervision over appraisements and classifications, for duty, of imported merchandise, as may be needful to secure lawful and uniform appraisements and classifications at the several ports. Three of the general appraisers shall be on duty as a board of general appraisers daily at the port of New York, during the business hours prescribed by the secretary of the treasury. * * *"

The thirteenth section provides for the revision of the reports of assistant appraisers as to value; the report of the appraisers as to value; the reappraisement by a general appraiser, if called for; and, in case of dissatisfaction by the importer or by the government, for an appeal to the board of three general appraisers, which shall be on duty at the port of New York, or to a board of three general appraisers who may be designated by the secretary of the treasury, which shall be on duty at that port or any other port; and the decision of the board of general appraisers is made final and conclusive as to the dutiable value of such merchandise against all parties interested therein.

The dutiable value having been ascertained as provided in section 13, section 14 provides for the ascertainment of the amount of duties chargeable, as follows:

"That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character, (except duties on tonnage,) shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within ten days after, ' but not before,' such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within ten days after the payment of such fees, charges, and exactions, if dissatisfied with such decision, give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and, if the merchandise is entered for consumption, shall pay the full amount of the duties and charges ascertained to be due thereon. Upon such notice and payment, the collector shall transmit the invoice, and all the papers and exhibits connected therewith, to the board of three general appraisers, which shall be on duty at the port of New York, or to a board of three general appraisers, who may be designated by the secretary of the treasury for such duty at that port, or at any other port; which board shall examine and decide the case thus submitted, and their decision, or that of a majority of them, shall be final and conclusive upon all persons interested therein, and the record shall be transmitted to the proper collector or person acting as such, who shall liquidate the entry accordingly, except," etc.

An examination of the foregoing provisions of the act shows clearly that the invoice or the verified statement, in form of invoice, and the consular declaration prescribed and required by the act, presuppose an original lawful entry. The declaration required of the owner, agent, importer, consignee, or manufacturer, in terms, is based upon both entry and invoice. The appraisement provided for presupposes an entry and invoice, and the assignment of the dutiable charges is based upon and presupposes an entry, invoice, and appraisal. In short, all the duties of customs officers prescribed in these sections, and, for that matter, in the whole act, relate to dealings with imported merchandise, in the regular course of passing the same through the custom-house. It therefore seems clear that the decision of the collector as to the rate and the amount of duties upon imported merchandise provided for in the fourteenth section, and which decision is made under certain circumstances reviewable by the board of general appraisers, is a decision as to the rate and amount of duties on imported merchandise lawfully entered, regularly invoiced, and regularly appraised; and that a decision of the collector as to the rate and amount of duties on goods seized for forfeiture, and as if said goods had been legally entered, but in fact not entered, not invoiced, and not appraised, is not such a decision as is contemplated in said fourteenth section. This view as to the proper construction of the fourteenth section is strengthened by the language of the section itself, wherein it is provided " that the decision of the board shall be final and conclusive upon all persons interested, and the record shall be transmitted to the proper collector, or person acting as such, who shall liquidate the entry accord-

ingly. * * *" And when section 14 is considered in connection with sections 934 and 938 of the Revised Statutes, both of which are undoubtedly in full force, there 'is no ground left for giving the board of general appraisers any jurisdiction in cases where goods are seized and libeled for forfeiture in the courts of the United States. Section 934 provides "that all property taken or detained by any officer or other person under authority of any revenue law of the United States shall be irrepleviable, and shall be deemed to be in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." Section 938 provides for delivery to claimants, by rule or order of court, goods seized under customs laws, on complying with the rules therein contained as to appraisement of the goods, payment of estimated duties, and execution of delivery bond, all under the direction of the court. The requirement therein of payment of duties, "in like manner as if the same had been legally entered," means no more and no less than that the claimant shall, as a condition precedent to obtaining the goods, pay the duties as claimed by the United States, to be summarily estimated and determined by the collector on the theory of a lawful entry of the goods, taking it for granted that such lawful entry could have been made. In the case of seized goods, and particularly in case of goods liable for forfeiture, sections 934 and 938 leave nothing for customs officers to decide or control in the regular line of the duties imposed upon them as such officers. For the foregoing reasons this court holds that on the protest and appeal of claimant, Chichester, in the matter of protest and payment of estimated duties on certain lead and silver ores libeled for forfeiture in the district court for the western district of Texas, the board of general appraisers was without jurisdiction, and the proceedings and decision therein should be reversed and vacated. This decision will leave the questions raised in the suit for forfeiture to be passed upon in due course by a court of competent jurisdiction. In case it shall be held that no ground of forfeiture existed, and there shall be judgment in favor of the claimant canceling his bond, he will not be remediless with regard to any claim he may have for the payment of more duties on the ores in question than were exigible under the law, as he can apparently obtain relief under section 24 of the act of June 10, 1890.

MAXEY, J., concurred.