UNITED STATES *v.* GENERAL ELECTRIC Co. (Nos. 1062 AND 1097).
GENERAL ELECTRIC Co. *v.* UNITED STATES (Nos. 1077 AND 1085).[1]

1. IMPORTATIONS. BY PARCEL POST.

    A convention with Great Britain provides that the merchandise imported under it shall be subject to all customs duties or customs regulations enforced in the United States and that the merchandise shall be delivered to the addressee upon payment by him of the duties properly chargeable thereon.  This provision waives the necessity of a formal entry, except when this is required, and a right of appeal to a classification board remains.—*In re* Chichester (48 Fed., 281) distinguished.

2. SAPPHIRES AS BEARINGS FOR METERS.

    The goods are known as precious stones.  They fall within the specific terms of paragraph 95, tariff act of 1909, as "articles composed of earthy or mineral substances," and they are not to be excluded from the operation of that paragraph by the rule of *ejusdem generis.*

United States Court of Customs Appeals, May 26, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7402 (T. D. 32957).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Charles D. Lawrence,* special attorney, on the brief), for the United States.

*Searle & Waterhouse* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

Involved in these two cases are cross appeals relating to the same classes of importations.   In one case a question of procedure of some importance is raised.   The Government in its appeal contends that no appeal lies under subsection 14 to a classification board for a revision of a decision of the collector as to the rate or amount of duty chargeable upon merchandise imported, under conventions with foreign countries, through the parcel post.

The language of the section is—

That the decision of the collector as to the rate and amount of duties * * * shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, * * * shall, within fifteen days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision, give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of duties and charges ascertained thereon.   Upon such notice and payment the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of nine general appraisers. * * *

The argument is made that unless there is a formal entry with an invoice, it is not intended by this section to authorize an appeal.

We think all the provisions of law should be read together, the convention with the foreign nation and the Treasury regulations,

---

[1] Reported in T. D. 33494 (24 Treas. Dec., 905).

which provide for a substitute entry through the post office, and which authorize the requirement of a formal entry whenever deemed necessary for proper administration. (See articles 818 and 815 of the Customs Regulations of 1908.)

The convention with Great Britain provides in article 7 (33 Stat. L., pt. 2, 230) that the merchandise imported under its provisions shall be subject to all customs duties or customs regulations enforced in this country, and shall be delivered to the addressee upon his payment of the duties properly chargeable thereon. The question is presented, therefore, whether with this grant of a supposed privilege the purpose was to attach thereto the condition of a waiver of a substantial right of appeal, or whether, on the other hand, the Government intended to waive the necesssity of a formal entry. We think the latter is the more reasonable construction of these regulations. The rights of the Government are fully protected by the provision that a formal entry may be required whenever deemed necessary. On the other hand, the rights of the importer would not be fully protected if an erroneous classification should be given and no remedy afforded.

The board, in the case here under consideration, held that the appeal should be allowed, following the case *In re* Fabien & Co., G. A. 6132 (T. D. 26664), in which an appeal from the action of the collector was sustained.

The Government relies upon the case *In re* Chichester (48 Fed., 281), in which case certain goods were seized by the Federal authorities and no entry was made. In that case the goods were seized by the collector of customs. It was charged that the importer intended to make and did make a false and fraudulent entry of the goods under a certain false invoice. Afterwards payment was made of the duties assessed by direction of the court and a protest was filed. The court held that the court having jurisdiction of the case, the Board of General Appraisers could not take jurisdiction of an appeal for reclassification, and stated in the opinion also that—

The appraisement provided for presupposes an entry and invoice, and the assignment of the dutiable charges is based upon and presupposes an entry, invoice, and appraisal.

This in such a case where no provision is made for a waiver by the Government is undoubtedly correct, and it would appear from the charge in the indictment that they were present in that case, so that whatever is said upon that subject in support of the view here contended for by the Government would appear to be *dicta.*

Following this the case G. A. 6468 ( T. D. 27680) held that where the importer or consignee declines to make entry of imported goods and goods are accordingly placed in general order where they remain for more than a year and are afterwards sold, the importer has not the right to appeal under subsection 14. This was a case likewise in which the law provides for no waiver or substitutes for a regular entry.

The case T. D. 28814 was a case of reappraisement and presented a somewhat different question.

Our conclusion is that the purpose and intent of these regulations were to waive the formal entry except when required, and that no legal right which the importer had of appeal to the classification board was withdrawn by such waiver.

As to seven of the entries under the one protest, the report of the collector indicates that the 15 days after the ascertainment of duties by the collector had elapsed before the protest was filed. The board correctly held that the 15 days began to run from the date of ascertainment and liquidation of the duty and not from the date of its payment.

The articles in question are small pieces of Ceylon sapphire in the form of rough slabs, finished V or cup jewels, and are used as bearings for electrical meters or other delicate measuring instruments. The articles were assessed for duty at 50 per cent ad valorem under the provisions of paragraph 112 of the act of 1909:

\* \* \* All articles composed wholly or in chief value of agate, rock crystal, or other semiprecious stones except such as are cut into shapes and forms fitting them expressly for use in the construction of jewelry. \* \* \*

The evidence shows that the stones in question are not semiprecious stones, but are known as precious stones. The articles were held dutiable at 20 per cent ad valorem as nonenumerated manufactured articles under paragraph 480.

The claim of the importers that the importation was dutiable at 10 per cent under paragraph 449 directly or by similitude as "stones cut or not set suitable for use in the manufacture of jewelry" was overruled.

On this appeal the issue is narrowed. The Government, without formally waiving the claim that the collector made the correct assessment, contends that the alternative claim in the protests made by the importers, namely, that the articles were dutiable at 35 per cent ad valorem under paragraph 95 as articles of earthy or mineral substances should be sustained, the protests each making this as one of the claims. The importers insist that they should be classified as precious stones cut but not set, by similitude under the provisions of paragraph 149, or as clock jewels under paragraph 192, or, as held by the board, as nonenumerated manufactured articles.

The first inquiry is naturally whether the goods come within the nonenumerated class or whether resort must be had to similitude or to the catch-all clause, and this leads to a consideration of the question whether the articles should be treated as articles and wares composed wholly or in chief value of earthy or mineral substances not specially provided for in this section, and not decorated in any manner.

. While not contending that the importation fails to fall within the specific terms of paragraph 95, as "articles composed of earthy or

mineral substances," the importers contend, however, that they do not fall within that phrase as used by Congress, and rely upon the doctrine of *ejusdem generis* as limiting the phrase to articles of a like character as those named in the preceding paragraph of Schedule B. Chief reliance is placed upon the case of Dingelstedt *v.* United States (91 Fed., 112). That case arose under the act of 1894, and the court reached the conclusion that it was not intended to include carbon sticks under the name of articles composed of earthy or mineral substances. The collocation of the various paragraphs was discussed and it was said:

This collocation * * * would seem to indicate most strongly that the phrase, "all articles composed of * * * mineral substances," was not used in its broadest sense, but restricted to articles composed of mineral substances similar to those enumerated in the schedule, if not in the subdivision. Strong confirmation of the correctness of this interpretation is found in the circumstance that Congress provides in the paragraph different rates of duty for the "articles" referred to when decorated, and, when not decorated, apparently they had in mind articles susceptible of decoration; and in the further circumstance that Congress has inserted in the paragraph the words "including lava tips for burners." If the phrase relied on were to be given the broad construction contended for, it would be wholly unnecessary to provide specially for lava tips; they would be included in the general phrase. Evidently Congress understood that this general phrase was used by it in such a restricted sense that it would not cover the lava tips, and therefore they were specially provided for. Construed as above indicated, the paragraph would not cover the carbons now before the court.

This case arose under the act of 1894, and so far as the decision rested upon the view that the paragraph should be restricted to articles susceptible of decoration, it had confirmation in United States *v.* Downing (201 U. S., 354). So far as it rested upon the rule of *ejesdem generis*, its force is much weakened by the fact that Congress in the act of 1897, paragraph 115, provided in the same Schedule B for manufactures of agate, alabaster, chalcedony, chrysolite, coral, cornelian, garnet, jasper, jet, malachite, marble, onyx, and a number of other articles not embraced in Schedule B of the act of 1894, but as unrelated to the articles embraced in such prior act as are the articles involved in this suit.

And again, in paragraph 112 of the present act, Congress, instead of enumerating all the articles above mentioned in paragraph 115, provided for "all articles composed wholly or in chief value of agate, rock crystal, or other semiprecious stones, except such as are cut into shapes and forms fitting them expressly for use in the construction of jewelry."

This departure from the language of the act of 1894, including as it does in the enumerated articles a long list of articles similar in use to sapphire, would seem to demonstrate that it was not the purpose to limit or restrict the paragraph in question to articles of inferior value, and that the rule of *ejusdem generis* is not to be given application.

There can be no doubt that the articles here in question do in fact fall within the precise language of the paragraph,. and we think they ought not to be excluded by the rule of *ejusdem generis.*

The decision should be *reversed* and the articles held dutiable under paragraph 95.