SHELDON & CO. ET AL. *v.* UNITED STATES (No. 1801).[1]

1. PLEADING—PROTEST, TIME FOR.

A protest against *duties* must be presented within 30 days after their *ascertainment* and *liquidation.* A protest against *fees, charges,* and *exactions* which are not duties must be presented within 15 days after *date* of *payment* of such fees, charges, and exactions.—Paragraph N of section 3, tariff act of 1913.

2. LIQUIDATION—ENTRY—APPRAISEMENT.

All goods lawfully imported must be entered; there can be no appraisement without an entry and no certain determination or assessment of ad valorem duties without an appraisement.—Section 3, paragraphs C, D, E, and F of the tariff act of 1913, and articles 572–582, Customs Regulations of 1915.

3. FORFEITURES—JURISDICTION.

Neither the Board of United States General Appraisers nor the United States Court of Customs Appeals has jurisdiction of forfeitures or suits in forfeiture.

4. ILLEGAL MAIL IMPORTATION.

Diamonds were brought into this country by mail. They were seized and denied entry by the collector of customs. Upon the recommendation of the United States district attorney, the Secretary of the Treasury authorized the collector to release them upon the payment of a sum of money equal to the duty, plus 20 per cent. This sum of money was not duty. Whether or not it was a fee, charge, or exaction . within the meaning of those terms as used in paragraph N of section 3 of the tariff act of 1913 is not decided. If it was, protest presented more than 15 days after its payment was too late. If it was a compromise or settlement of forfeiture proceedings, threatened or commenced, the Board of General Appraisers and this court are without jurisdiction of the subject matter.

United States Court of Customs Appeals, December 4, 1917.

APPEAL from Board of United States General Appraisers, G. A. 8000 (T. D. 36853). [Affirmed.]

*Crim & Wemple (William M. Wemple* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

[Oral argument Oct. 9, 1917, by Mr. Wemple and Mr. Doherty.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the Court:

This appeal was taken from two separate decisions covered by one opinion of the Board of General Appraisers, dismissing two different protests filed by two different importers, and involves two distinct and independent importations.

---

[1] T. D. 37455 (33 Treas. Dec., 476).

Protest No. 808947 was filed by G. W. Sheldon & Co., and relates to cut diamonds which were brought into the country from Switzerland in sealed packages by registered mail. The diamonds were discovered in the mails, and the collector of customs at the port of New York refused entry of the goods and declined to deliver them to the importers on the ground that diamonds were dutiable and that, therefore, their importation by mail was forbidden by the Universal Postal Convention. The case was apparently submitted to the United States attorney for the district, and he reported to the Secretary of the Treasury that the ends of justice did not call for the forfeiture of the merchandise and recommended that the diamonds be released to the importers on the payment of a fine equal to the duty, plus 20 per cent thereof. (See secs. 838, 3084, and 3087, Revised Statutes.) The Secretary of the Treasury approved the recommendation of the United States attorney and authorized the collector to release the diamonds on payment of a fine equal to the duty, plus 20 per cent of the duty. On May 31, 1916, G. W. Sheldon & Co., complying with the recommendation made by the United States attorney and approved by the Secretary of the Treasury, paid an amount equal to the estimated duty, plus 20 per cent thereof, and took delivery of the goods. On June 30, 1916, the company filed its protest, objecting to the refusal to permit entry of the goods and protesting against the payment of $4,021.84 exacted as regular duty and the payment of $804.37 exacted as a penalty. As an additional ground of protest, it was claimed that neither the sum of $4,021.84 nor the sum of $804.37, nor any other sum, could be lawfully demanded until after appraisement of the merchandise had been had in accordance with the provisions of the customs administrative act.

Protest No. 809089 was presented to the collector by J. G. Jacobson and covered cut diamonds brought into the country from Cuba by mail in sealed packages for account of Jacques Goldstein. The diamonds were found in the mails, and having been seized by the collector they were refused entry and apparently reported to the United States attorney for proceedings in forfeiture. The United States attorney recommended that some of the goods be released to the importer on the payment of a fine equal to the duty, plus 20 per cent thereof, and held the rest of the consignment for further consideration. The collector concurred in the recommendation of the United States attorney, and delivery to the ultimate consignee of the goods recommended for release was authorized by the Secretary of the Treasury, upon the payment, within 30 days from notification, of a fine equal to the duty and 20 per cent added. The fine was paid by the importers on June 9, 1916, and payment thereof protested on July 6, 1916.

The first question to be resolved is whether the protests were filed in time and the solution of that problem depends on whether the

moneys demanded by the collector and paid by the importers were in fact duties or some other form of monetary exaction. If the moneys received by the collector represented duties, then the time to protest began to run from the date of their ascertainment and liquidation, that is to say, from the day when the collector officially and definitely fixed, settled, and determined the duties due. On the other hand, if the sum paid was not duties, but a nondutiable fee, charge, or other customs exaction, then the time to protest ran from the date of payment. Just why the time to protest begins to lapse from the date of ascertainment and liquidation in the one case and from the date of payment in the other may be a bit perplexing at first, but any doubt as to the reason for the distinction disappears once it is understood that the amount of duties due is definitely determined *after* the payment of *estimated* duties, whereas the amount of a nondutiable fee, charge, or exaction is definitely settled and fixed, so far as the collector is concerned, when payment is made. Even if there were no reason for the distinction, it is enough for us to know that Congress has made it and has maintained it for a period of more than 50 years. (Tariff act of 1864; secs. 2931 and 2932, Revised Statutes of 1878). In the tariff act of 1864 and the Revised Statutes of 1878, protests against duties were distinguished from protests against nondutiable fees, charges, and exactions, and were provided for in separate sections. In the customs administrative act of June 10, 1890, as well as the tariff acts of 1909 and 1913, both classes of protests were in the same section or paragraph, nevertheless protests from duties and protests from nondutiable fees, charges, and exactions were just as separately and distinctly provided for in those acts as they were in the act of 1864 and in sections 2931 and 2932 of the Revised Statutes of 1878. Paragraph N of section 3 of the tariff act of 1913 emphasizes the distinction between protests against duties and protests against fees, charges, and exactions by providing in effect that the former must be presented within *30 days* after, but not before, the *ascertainment and liquidation* of duties, and that the latter must be presented within *15 days after date of payment* of such fees, charges, and exactions. It is evident, therefore, that under the present tariff act the protests in both cases now under consideration came too late unless the moneys paid to the collector were duties.

In neither case were the importers permitted to enter the diamonds, and in neither case was any appraisement made of the merchandise. As all goods lawfully imported must be entered, and as there can be no appraisement without an entry, and no certain determination or assessment of ad valorem duties without an appraisement (sec. 3, paragraphs C, D, E, and F of the tariff act of 1913, and arts. 572–582, Customs Regulations of 1915), the denial of entry and the nonappraisement of the merchandise, coupled with the seizure of the goods and the reference of the matter to the United States attorney

conclusively establishes, in our opinion, not only that the collector did not levy duty on the goods, but that he regarded the diamonds as illegally in the country and not subject to duty. It is true that the collector, on the recommendation of the United States attorney, exacted the payment of a fine *equal to the duty*, plus 20 per cent, and made such payment a condition for the delivery of the goods. As there was no appraisement of the goods, however, and consequently no way of determining the duty, it is very evident that the collector's demand meant nothing more than a demand for a fine equal to the collector's *estimate* of duties, plus 20 per cent. In fact, on its very face, the demand clearly demonstrates not only that he was not attempting to collect duties, but that he was holding the goods for the payment of a sum very much in excess of his own estimate of duties. Whether the sum which the collector required the importers to pay as a condition for the delivery of the merchandise was a fee, charge, or exaction within the meaning of those terms as used in paragraph N of section 3 of the present tariff act it is not necessary to decide. Conceding that the importers paid the money in satisfaction of a customs fee, charge, or exaction, their protest not having been filed within 15 days after such payment was too late, and from that it results the decision of the collector became final and conclusive against them. If the moneys received by the collector were paid to him as the representative of the United States attorney, or in compromise of a threatened suit in forfeiture and not in satisfaction of duties or of a customs fee, charge, or exaction, then no relief can be granted the importers in this proceeding, inasmuch as forfeitures and suits in forfeitures are beyond the jurisdiction of the Board of General Appraisers and of this court. In re Chichester (48 Fed., 281, 285–286).

We conclude—

First. That the amount paid by the importers was a penalty the payment of which was exacted by the collector as a "fine" for what he conceived to be a violation of the customs laws, and exacted as a condition not for the delivery of goods subject to duties, but as a condition for the release of seized goods threatened with forfeiture. Possibly it was not within the power of the collector to impose a fine, but whether it was or not the fact remains that the moneys required of the importers under color of official authority were not duties in fact and were neither demanded nor paid as duties. The importers, therefore, did not have 30 days within which to protest the payment made.

Second. That if the amount paid be regarded as a customs fee, charge, or exaction, the protest came too late because it was presented more than 15 days after payment was made.

Third. That if the payment be regarded as made by way of compromise or settlement of forfeiture proceedings, threatened or

commenced, the Board of General Appraisers and this court are without jurisdiction of the subject matter and therefore can grant no relief.

The decision of the Board of General Appraisers is *affirmed.* ·