STAN NEWCOMB AND BARBARA TODD *v*. UNITED STATES (No. 4617)[1]

[1] C. A. D. 413.

United States Court of Customs and Patent Appeals, September 30, 1949

*Lawrence, Tuttle & Harper (Frank L. Lawrence, Charles J. Evans,* and *George R. Tuttle* of counsel) for appellant.

*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

[Oral argument May 11, 1949, by Mr. Tuttle and Mr. Donohue]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court (Third Division), Abstract 52470, denying the petition of appellants for the remission of certain additional duties assessed upon trousers, under circumstances hereinafter related, by the Collector of Customs at the port of San Diego, California, by reason of section 489 of the Tariff Act of 1930, which provides for the assessment of such duties in cases where the final appraised value of imported merchandise exceeds the entered value.

One of the assignments of error by appellants is the denial by the trial court of their motion for a rehearing. If it were sustained, the case would be remanded without any discussion by us of other questions. Hence, it is proper that it be disposed of at this point.

Appellants' brief makes no reference whatever to the assignment nor was it discussed at the oral hearing. Consequently, we regard it as having been abandoned. *United States* v. *Joseph G. Brenner Co.,* 19 C. C. P. A. (Customs) 105, 107, T. D. 45243; *Unitee States* v. *Fung Chong Co.,* 34 C. C. P. A. (Customs) 41, 45, C. A. D. 342. See also *In re Valko et al.,* 36 C. C. P. A. (Patents) 899, 173 F. (2d) 275, 81 USPQ 102; *In re Henze,* 36 C. C. P. A. (Patents) 1038, 173 F. (2d) 997, 81 USPQ 398. In the case of *Caldwell* v. *Standard Accident Insurance Co.,* 98 F. (2d) 364, the United States Circuit Court of

Appeals of the Sixth Circuit dismissed one of two appeals because Caldwell was held to have abandoned his appeal by failing to press his assignments of error either in brief or in oral argument. In the Fifth Decennial Digest (American Digest System 1936 to 1946) Vol. 3, beginning at page 1724, Section 1078, is given a long list of cases decided in State courts and in the courts of the District of Columbia, holding that an assignment of error not argued in briefs nor orally will not be considered.

No further consideration or action is required by us on this particular assignment of error.

Section 489 provides, *inter alia*, that the additional duties assessed under it

* * * shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

The rate of additional duty provided is 1 per centum of the total final appraised value of the merchandise for each 1 per centum that such final appraised value exceeds the value declared in the entry, but the total additional duty is limited to 75 per centum of such final appraised value.

It appears that there were eight entries made during the months of June, July, and August, 1946. According to the brief on behalf of appellants, the entered value in the aggregate was $702. A further statement in the brief reads:

Thus the undervaluation had these serious consequences: *Penal* duty of $1667.25, at 75 percent of appraised value, and forfeiture proceedings for presumed fraud. Also, of course there was a proportionate increase in regular duty. Assessment at 50 cents per pound plus 50 percent ad valorem under tariff paragraph 1115 (a), on wool wearing apparel, would result in regular duty of probably more than $1200 and an apparent forfeitable value of more than $3400 on a series of importations which as above noted involved actual outlay by the importer of only $702. (Italics ours)

The word "Penal" in the quotation has been italicized by us. It will be observed that section 489 forbids the additional duties being construed to be penal. .

It is conceded in the brief for appellants that the finally appraised value of the merchandise exceeded the value declared in the entry by more than 100 per centum. (The brief for the Government states that it was over 300%). Section 489 provides that in such cases the "entry shall be presumptively fraudulent," and it has been uniformly held that, by reason of the statutory language, the burden rests upon

the party seeking remission of additional duties to establish affirmatively that the undervaluation on entry was without intention to defraud the revenue or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value.

Testimony was taken on behalf of both parties. Newcomb, one of the petitioners, testified in his own behalf and also caused to be introduced the testimony of Gordon C. Hodgeson, who appraised the merchandise, and Bernardino Parra Holgin, a tailor of Tijuana, Mexico. On behalf of the Government, the respondent, there was introduced the testimony of Gerard C. Polite, a United States Customs agent, Mrs. Barbara Todd Adams, a customs broker who made the entries for Newcomb and who is a party appellant here, Armand J. Rascon, an interpreter for the United States Court of the Southern District of Southern California, and Gordon C. Hodgeson, who was recalled and presented as a Government witness.

Both counsel for appellants and counsel for the Government seem to agree that the Customs Court correctly summarized the greater part of the testimony, and both quote the most of the summarization in their briefs; that for appellants omitting some parts which their counsel deemed immaterial to the issue. We avail ourselves of this summarization in the opinion by Cline, J., and reproduce it as quoted in the Government's brief:

The merchandise consisted of trousers which were imported from Mexico by Stanley Hugh Newcomb, one of the petitioners herein. At the trial Mr. Newcomb testified that he was in the tailoring business in San Diego; that he had had the material for the trousers cut in his shop in San Diego; that he had personally delivered it together with the so-called trimmings, such as zippers, lining, pocketing, and buttons, to Parra Brothers in Tia Juana for assembly; that he paid $6 a pair for the work; that he brought the completed trousers back to the United States in his car; that when he told the customs officials the articles were for resale, they suggested that he have a customs broker take care of the entry; that he then went to Barbara Todd's office; that she asked him how much the trousers had cost and he gave her the invoice from Parra Brothers showing the amount to be $6 a pair; that she made out the entry at that value; that he knew the trousers were worth more than $6 a pair; that he was not asked the value, but turned over the invoice showing the cost; that he believed duty would be assessed only upon the basis of the cost in Mexico.

Mr. Newcomb further testified that about half way through these transactions [there were several importations] Mr. Hodgeson [the appraiser] asked for a pair of trousers for appraisement purposes; that he later called at Mr. Newcomb's office in regard to a questionnaire which Mr. Newcomb had received; that Mr. Hodgeson asked for information as to the cost of the materials, trimming, and labor; that Mr. Newcomb furnished him with the information; that that was the first time he had been asked who had furnished the material for the trousers.

On cross-examination Mr. Newcomb stated that he did not tell Mrs. Todd nor the customs officials that the $6 represented merely the tailoring charges; that the question did not come up; that he did not apprise any Government officials at the time he took the material over to Mexico.

Mr. Hodgeson testified that the merchandise was appraised on the basis of cost of production; that he learned from Mr. Newcomb prior to appraisement

the facts upon which he arrived at the value; that appeals to reappraisement were filed but were abandoned in a short time.

Respondent called Gerard C. Polite, customs agent, who testified that he had interviewed Mr. Newcomb in regard to these importations; that Mr. Newcomb stated that the material had been cut in his shop in San Diego; that he had supplied the materials and the trimmings and that Parra Brothers had done the work; that when Mrs. Todd asked him the cost of the trousers to him in Mexico he stated that they were $6 a pair; that he did not advise the broker nor the customs officer that the $6 per pair represented the cost of labor only. Mr. Polite also testified in regard to a conversation with Mr. Parra in *Tia Juana* in which Mr. Parra said that he had supplied the trimmings and that Mr. Newcomb had furnished the material only.

Mrs. Barbara Todd Adams testified that she had made the entries in this case; that she had asked Mr. Newcomb the price of the trousers; that he had said $6 and the invoice showed $6; that she made no further inquiry "partly because of his reputation"; and that she did not attempt to ascertain the freely offered price for similar trousers in Mexico.

Bernardino Parra Holgin testified that he had a tailor shop in *Tia Juana*; that he had received material and trimmings from Mr. Newcomb and had made them into trousers for which he charged $6 a pair; that he had had a conversation with Mr. Polite; that he stated that he charged Mr. Newcomb $6 a pair for the trousers; that he would charge $8 to his own customers when the customers furnished the cloth; that he had not told Mr. Polite that he had supplied the straps, lining, pockets, buttons, or zippers that went into the trousers delivered to Mr. Newcomb; that he had received all of those parts from Mr. Newcomb and had only done the work; that in the case of his own customers, all that they would provide would be the cloth.

There was no discussion in the brief for appellants of the testimony of the Mexican tailor nor of the witness Polite (the court's summary of which was omitted from the brief), it being the view of appellants' counsel that "there is nothing therein that has any bearing on the crucial question of Newcomb's intention to defraud etc." We agree with this view.

Section 489, the parts of which that are material here have appeared in all general tariff acts beginning with that of July 29, 1897 (see 19 U. S. C. sec. 1489 and notes thereunder), is somewhat unusual in that it construes itself, so to speak, as to certain of its provisions and, in effect, forbids the courts making any different construction.

One example is in the declaration: "Such additional duties shall not be construed to be penal. * * *" For a comprehensive review of the history of this provision up to and including the 1897 tariff act see the decision of the Supreme Court of the United States in the case of *Helwig* v. *U. S.*, 188 U. S. 605. Ordinarily, the question of the punitiveness of a statutory provision is determined by the courts. Here Congress has decided it.

Another example is embraced in the provision: "If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be *presumptively fraudulent* * * *." (Italics ours) See *Helwig* v. *U. S., supra;* also, *Ringling Bros., Barnum & Bailey Combined Shows, Inc.* v. *United*

*States*, 31 C. C. P. A. (Customs) 191, C. A. D. 272, and the pertinent cases therein cited. Ordinarily, the question of whether a particular act is presumptively fraudulent is determined by the courts. The provision quoted eliminates the discretion of the courts in the particular named.

A third example is found in that provision of the section used in connection with the direction for seizure of undervalued merchandise, which provision declares that in any legal proceeding, other than a criminal prosecution, that may result from a seizure, "the undervaluation as shown by the appraisal *shall be presumptive evidence* of fraud * * *." (Italics ours) Ordinarily, determination of the presumptiveness attaching to evidence rests with the courts (including juries as parts of the courts when juries are used), and generally where there is an allegation of fraud the burden rests upon the alleging party to establish it, at least *prima facie*. That is reversed in section 489. By it the courts are required to accept undervaluation of the degree defined as being presumptive evidence of fraud, and the burden rests upon the accused party in all civil procedures (as distinguished from criminal prosecution) affirmatively to establish the negative.

It is thought that the decision of this court stated in a comprehensive opinion by the late Presiding Judge Graham in the case of *United States* v. *American Metal Co., Ltd.*, 12 Ct. Cust. Appls. 440, T. D. 40612, 47 Treas. Dec. 36, will prove of interest in connection with this case, because of its review of questions that have a bearing here.

It is deemed not improper to say here that the record before us does not disclose whether the involved merchandise was seized by the collector. If it was, jurisdiction of the procedure in regard to such seizure, with possible forfeiture, does not lie with this court. *United States* v. *American Metal Co., Ltd., supra*, citing *Sheldon* v. *United States*, 8 Ct. Cust. Appls. 215, T. D. 37455, 33 Treas. Dec. 476. However, it was held, in effect, in the *American Metal Co., Ltd.* case, *supra*, that a petition for remission of duties where the final appraised value exceeded the entered value more than 100 per centum is within this court's jurisdiction and that it is concurrent with an action involving forfeiture, jurisdiction of which latter lies with some other United States court.

The right of Congress to enact provisions such as those which have been recited is not in question. Such legislation was definitely declared by the Supreme Court in the *Helwig* case, *supra*, to be within the scope of congressional authority, although the legislation was held not applicable in that particular case because it was passed after the importation of the merchandise there involved. So far as we are advised, the constitutionality of the legislation has never been raised in the courts. The constitutional question raised in the case of *Goldman* v. *United States*, 28 C. C. P. A. (Customs) 162, C. A. D. 139,

did not involve the provisions here under discussion and no constitutional question is raised in the pleadings in the instant case.

While, as has been indicated, a very earnest appeal has been made on behalf of appellants, the financial hardship resulting from the assessment being vigorously stressed, it is a fact that in the final analysis the only excuse made for the conceded undervaluation of the merchandise by Newcomb is what the brief refers to as his "remarkable ignorance * * * as to the legal requirements * * *."

The brief argues:

"Intention" is the key word, the indispensable prerequisite to *penal* consequences of undervaluation, and scienter is the prime essential of the statutory "intention to defraud" etc. Without guilty knowledge there can be no such intention. No such knowledge existed here, but only the rudimentary understanding that the goods were subject to duty on some basis, but with no realization of what that basis should be. While such ignorance is not commendable, it most certainly does not involve wrongful intent. (Italics ours)

First, we again direct attention to the use of the word "penal," and repeat that the statute denies authority to construe the additional duties assessed under section 489 to be penal. Even if we regarded them as penal in fact, it is certain that they are not penal in law, because Congress has decreed otherwise.

Second, we do not think appellant Newcomb met the burden which the statute imposed upon him by simply testifying that he was lacking in knowledge of the law. See *United States* v. *Dorf & Co.*, 36 C. C. P. A. (Customs) 29, 30, C. A. D. 392. It was incumbent upon him to learn some law, and it may be remarked that he had immediately at hand the means for informing himself—his broker whom he employed to make and who made the first entry on June 17, 1946, and followed up during the succeeding weeks by making all the other entries. Incidentally, the broker is a co-appellant (we assume merely a nominal party) with Newcomb. Surely the broker knew the law governing the statement of valuation in entries of merchandise and could have informed Newcomb if he had sought information—an activity which again and again the courts have declared to be a duty of an importer. It is surprising that Newcomb made no inquiry, and it is also surprising that the broker did not inform him of the essentials even without being asked to do so. As agent for the importer the broker owed him that service. Also, the principal here is responsible for the omissions of his agent.

All that the testimony of the broker shows about the first entry (and there is nothing material as to the others) is that Newcomb was asked the *price*—not the *value* but the *price*—of the trousers; that he said $6; that the invoice showed $6; and that no further inquiry was made of him, "partly because of his reputation." The quoted phrase is not explained and so is quite cryptic. It may have a meaning wholly complimentary to Newcomb, or it may have one entirely

different. The broker was called as a witness by the Government and was not cross-examined by counsel for Newcomb.

The brief for appellants makes some comment upon what it refers to as "the uncooperative customs attitude" in which, after referring to customs regulations outlining methods of obtaining official information, it is said:

* * * Seemingly, the only important requirement which was not met by Newcomb was that of making a "specific request." This apparently fatal omission would have been due only to ignorance, and it is somewhat astonishing that the appraiser should not with entire propriety have made friendly suggestions for which there was such obvious and critical need.

The record does not disclose any inquiries on the part of either Newcomb or the broker respecting any matter concerning which it was the duty of the appraiser (it is not shown that he saw any appraiser at the time he went to the customhouse to make entry) to advise. See *United States* v. *Dorf & Co., supra.* It is shown that someone in the customhouse suggested to him that he obtain the services of a broker in making entry—probably excellent advice which would have saved him much grief if the broker had rendered him proper service. This, the broker might have done if Newcomb had evinced any curiosity about the legal requirements attending the entry of imported merchandise, although there does not seem to have been any real interest manifested on the part of the broker who, as has been said, was Newcomb's agent.

In the case of *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, 49 Treas. Dec. 513, there was involved a petition for remission of additional duties assessed under section 489 of the Tariff Act of 1922 (prototype of section 489 of the 1930 act), in a case where the appraiser had advanced the value of the merchandise only 97 per centum of the entered value. That case differed from the instant case in that the undervaluation did not fall within the provision of the statute declaring the entry to be "presumptively fraudulent." Nevertheless, we there cited numerous cases and said:

* * * Summarized, these adjudged cases announce certain fundamental facts which the petitioner must establish if he is to obtain relief; First, he must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

In many cases decided subsequently to our decision in the *Wolf & Co.* case, *supra,* we have cited that case reaffirming the view so expressed. Quotations from some of those cases will be found quoted in our decision in the *Ringling Bros., Barnum & Bailey Combined Shows, Inc.* case, *supra.* The law is so well settled that we need not encumber this opinion with a long list of citations.

It seems almost incredible to us that the party Newcomb could have been as densely ignorant of the requirements which have to be met in entering imported merchandise as is argued here in his behalf. His testimony shows that at the time of testifying, in August 1947, he had been in the tailoring business in the city of San Diego for a period of fifteen years. It does not show that he had had experience in importing merchandise, but, on the other hand, it does not show that he had not had such experience, and by the terms of the statute he was under the burden of establishing a negative, but even if it had been established that he was wholly without experience, that would not have been sufficient to justify granting the remission sought. He knew there was such a thing as imported merchandise. He testified that a part of that which he had cut to pattern and carried into Mexico to be finished into trousers, apparently ready for resale, was imported cloth, although he did not import it. Furthermore, the paper which he at first seems to have attempted to fill out must have taught him something about valuation being necessary. Incidentally, it is somewhat singular that the broker asked him only as to *price*. Certainly the broker must have known that what was required was value, and that price was not controlling. Newcomb himself stated that he knew the imported trousers were worth more than six dollars a pair (they were finally appraised at nineteen dollars per pair upon the basis of cost of production), but that he was not asked the value, and that, at the time of importation, it was his assumption that he would be assessed only upon the basis of his cost in Mexico.

If appellant Newcomb in fact knew what the law governing such cases was he, of course, would have to be held guilty of fraud in fact— not just "presumptively guilty." If, on the other hand, he was ignorant concerning customs matters as is here argued, the ordinary prudence which one of his disclosed business experience must have possessed surely dictated inquiry by or for him. In the case of *National Silk Spinning Co., Inc.* v. *United States*, 28 C. C. P. A. (Customs) 24, C. A. D. 119, we said *inter alia:*

* * * The record does not disclose that anyone representing appellant at any time made any effort to ascertain whether the entered value was equal to the proper dutiable value; it is utterly barren of proof of anything even approaching satisfactory evidence in support of the petition, and reflects nothing but indifference as to the proper value of the merchandise. It therefore does not meet the requirements of satisfactory proof under the statute. Under the circumstances there was a duty upon the appellant to seek information as to the correctness of its representations as to the value of its merchandise. This duty was not performed.

What Newcomb may have done subsequently to having the entries made, by way of giving information to the customs authorities who questioned him, is of no moment so far as the issue here is concerned. It is suggested that the appraiser called upon him before all the entries had been made and received information from him. The testimony

on this point is not very clear to us, but whatever he may have told the appraiser, there was a continuation of the undervaluation in all subsequent entries.

The cases cited in the brief for appellants have been examined, but we do not find the facts recited in them analogous to the facts of the instant case.

When appellant Newcomb, the actual party in interest, is given the benefit of the most charitable view which the record will admit, we think it clear that he may not prevail in the effort to secure remission of the duties of which he complains. If it be conceded that the result of his action is harsh as to him, it must be realized that the statute itself seems harsh. The courts, however, cannot strike down statutes simply because of harshness resulting from their operation, and it must be borne in mind that it is vital to the public that the revenues of the Government be safeguarded, even if it requires a harsh statute to accomplish it.

In the case of *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, C. A. D. 41, we said:

> It is not a question as to whether the record affirmatively shows that appellant entered the goods in bad faith, but the question is whether or not it has met its burden of proving to the trial court that in making the entries such good faith was exercised as is required by the statute.

We deem that statement apropos here.

The judgment of the United States Customs Court is *affirmed.*

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.